IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM SCOTT REDINGER, | ) | |
|     Plaintiff | ) | C.A. No. 22-137 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| JONATHAN D. OECHSLE, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

    **A.   Relevant Procedural History**

Plaintiff, an adult resident of Erie, Pennsylvania, initiated this action by filing a complaint on April 26, 2022, against Defendant Jonathan D. Oechsle, an adult resident of Raleigh, North Carolina. At all times relevant to this action, Plaintiff was a key executive employee with LORD Corporation ("LORD") before separating from his employment on October 30, 2017. At the time of Plaintiff's separation Defendant served as LORD's Chief Legal Officer and Secretary.

Plaintiff alleges claims of constructive fraud and breach of fiduciary duty arising from Defendant's alleged failure to inform Plaintiff of the pending acquisition of LORD by Parker-Hanifin Corporation ("Parker-Hanifin") before Plaintiff's shares of LORD's common stock were redeemed on April 17, 2019, and Defendant's alleged failure to "abstain from redeeming" Plaintiff's shares until after the acquisition was finalized. As relief for his claims, Plaintiff requests compensatory damages in the amount of $ 1,343,545.48, plus interest, as well as punitive damages for his constructive fraud claim.

Presently before the Court is Defendant's motion to dismiss [ECF No. 4] In particular, Defendant argues that Plaintiff's claims (1) are barred by Pennsylvania's two-year statute of limitations; (2) are barred by North Carolina's economic loss rule and/or Pennsylvania's gist of the action doctrine; and (3) fail to state a claim upon which relief may be granted because Plaintiff cannot satisfy the elements of either claim. Plaintiff has filed a brief in opposition to Defendant's motion [ECF No. 7], disputing the alleged deficiencies raised in Defendant's motion, and Defendant subsequently filed a memorandum in reply to Plaintiff's opposition brief [ECF No. 10]. This matter is now ripe for consideration.

### B. Relevant Factual History[1]

Plaintiff was employed with LORD for 29½ years before he retired on October 30, 2017 (ECF No. 1, Complaint, at ¶ 8). During his tenure, Plaintiff accumulated 742 restricted Class B shares of LORD capital stock (Id., at ¶ 9). On May 14, 2004, Plaintiff and LORD entered a Second Restated Stock Purchase Agreement ("Purchase Agreement") [ECF No. 1-2], which provides that, upon Plaintiff's termination or retirement, Plaintiff is required to sell, and LORD is obligated to purchase, all of Plaintiff's Class B shares according to the option chosen by Plaintiff regarding the timing and mechanics of the stock repurchase. (ECF No. 1-2, at Section 2(a)).

After his separation, on November 20, 2017, Plaintiff executed an "Election for Repurchase of LORD Corporation Class B Restricted Stock" (the "Election"), in which Plaintiff selected "Option 2," indicating his desire to have his shares repurchased on a pro

---

[1] The Court accepts as true all well-pleaded allegations of the Complaint, as is required for purposes of determining Defendant's motion.

rata basis over a period of five years. [ECF No. 1, at ¶ 10; ECF No. 1-1]. Among other things, the Election contained the following Acknowledgement:

> I understand and agree that the Restated Stock Purchase Agreement with the Corporation shall govern. I understand that in the event I select Options 1 or 2, **successive closings shall be no later than the anniversary of the initial closing.**

(ECF No. 1, at ¶ 11; ECF No. 1-1) (emphasis added by Plaintiff). Nonetheless, in the Comments Section provided on the Election, Plaintiff wrote, "I strongly prefer successive closings to be each December after dividends payment." (ECF No. 1, at ¶ 10; ECF No. 1-1).

According to the Purchase Agreement, the timing of the share repurchase under option 2 is to occur as follows:

> The initial sale shall be closed at the time fixed by Lord not more than 45 days after the effective date of election under this Option 2. **Successive closing dates shall be no later than the anniversary of the initial closing date...**

(ECF No. 1, at ¶ 14; ECF No. 1-1, at ¶ 2(a)) (emphasis added by Plaintiff).

The initial closing occurred on December 14, 2017, at which time LORD repurchased 148 shares of Plaintiff's Class B stock (ECF No. 1, at ¶ 12). In early 2018, Plaintiff informed both Defendant and LORD employee, Gene Tomczak, that he would like to redeem the next 20% of his Class B shares in December 2018, consistent with his comment on the Election form (Id. at ¶ 18). In response to his request to redeem his shares in December, Plaintiff received an email on February 12, 2018, from Denise Austin ("Austin"), LORD's Shareholder Relations Specialist, who advised Plaintiff that LORD had a consistent practice of making recurring redemptions "among all retirees" during the months of March and April (Id. at ¶ 19). Austin followed up with an email on April 16, 2018, asking Plaintiff to designate which of his stock certificates he would like to have redeemed, to which Plaintiff responded that he had "no plans to

redeem shares until the anniversary of [his] previous redemption per the stock agreement" (Id. at ¶¶ 20-21). Nonetheless, Defendant telephoned Plaintiff and informed him of LORD's intent to redeem his shares in April and that it would be "in [Plaintiff's] best interest to redeem [his] shares in April so that [he] could reinvest that money elsewhere." (Id. at ¶ 22).

Approximately one year later, on or about March 6, 2019, Plaintiff saw a newspaper article reporting that LORD was exploring the possibility of selling the company. (Id. at ¶ 23). Plaintiff alleges that he "broached the issue" with Austin, and then received an email response from Defendant on March 11, 2019, stating that "the company is not commenting on the speculation in the [news] article" (Id. at ¶ 24). Plaintiff and Defendant then exchanged a series of emails from March 11 through April 5, 2019, regarding Plaintiff's follow-up question as to whether the repurchase of Plaintiff's stock would be halted if he was rehired by LORD as a full-time employee (Id. at ¶¶ 25-29); however, he was informed days later that he would not be rehired (Id. at ¶ 30). Thereafter, on April 17, 2019, LORD redeemed 148 shares of Plaintiff's Class B stock, despite Plaintiff's stated desire to have the redemption occur in December (Id).

Only nine days later, on April 26, 2019, Parker-Hanifin "entered into a definitive agreement to acquire LORD for approximately $3.675 billion in cash … subject to customary closing conditions, including receipt of applicable regulatory controls" (Id. at ¶ 31). Plaintiff learned about the pending transaction through a press release that was issued by Parker-Hanifin on April 29, 2019. (Id. at ¶¶ 31 n. 2, 56). Plaintiff alleges that, "At no point prior to April 26, 2019" did Defendant or any other officer of LORD inform him of the pending merger with Parker-Hanifin, "nor did [Defendant] or any other officer of LORD abstain from redeeming [Plaintiff's] shares in light of the merger prior to April 26, 2019" (Id. at ¶ 32).

4

## II.     DISCUSSION

Defendant has moved to dismiss Plaintiff's claims arguing, *inter alia*, that they are barred by Pennsylvania's two-year statute of limitations applicable to such claims.[2] In particular, Defendant points out that Plaintiff "expressly alleges that he 'discovered and learned' of the alleged constructive fraud and breach of fiduciary duty on April 29, 2019 – nearly three years before the Complaint was filed on April 26, 2022. Based on his own allegations, therefore, his claims are time-barred." (ECF No. 5, at p. 7).

In response, Plaintiff disputes that Pennsylvania's statute of limitations applies, asserting, instead, that North Carolina's statute of limitations governs his claims because they "arise from and stem from the Purchase Agreement," which contains a "governing law" provision that states, "the validity and effect of this Agreement shall be governed by and be construed and enforced in accordance with the laws of the State of North Carolina." (ECF No. 7, at p. 9; ECF No. 1-2, at ¶ 12). In North Carolina, the statute of limitations for constructive fraud is ten years, N.C. Gen Stat. § 1-56 (2015), and the limitations period for breach of fiduciary duty is three years, N.C. Gen. Stat. § 1-52(1). Thus, according to Plaintiff, his claims are timely. (ECF No. 7, at pp. 8-10)

Defendant counters, however, that Plaintiff's application of North Carolina's statute of limitations to his tort claims is misplaced. (ECF No. 10, at p. 2). The Court agrees. In our district, "[c]ourts analyze choice of law provisions 'to determine, based upon their narrowness or breadth, whether the parties intended for the agreement to encompass all elements of their association.'" Merchants Distributors, LLC v. Harold Friedman, Inc., 2018 WL 1660549, at *3

---

[2] The Third Circuit Court has concluded that Pennsylvania's two-year statute of limitations applies to claims for both constructive fraud and breach of fiduciary duty. See, e.g., Riggs v. AHP Settlement Trust, 421 Fed. Appx. 136, 138 n.2 (3d Cir. 2011) (constructive fraud); Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 422 (3d Cir. 2005) (breach of fiduciary duty).

(W.D. Pa. Apr. 5, 2018), quoting Grimm v. Citibank (S. Dakota), 2008 WL 4925631, at *4 (W.D. Pa. Nov. 14, 2008) (*quoting* Compositlex, Inc. v. Advanced Cardiovascular Sys., Inc., 795 F.Supp. 151, 157 (W.D. Pa. 1992)). "A contract's choice of law provision 'do[es] not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship.'" Merchants Distributors, at *3, quoting Broederdorf v. Bacheler, 129 F. Supp. 3d 182, 191 (E.D. Pa. 2015) (*quoting* Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc., 848 F. Supp. 569, 576 (E.D. Pa. 1994)). Where the choice of law provision is expressly limited to "this agreement," such language "demonstrate[s] its restricted scope and its applicability" to breach of contract claims alone. Jiffy Lube, 848 F.Supp. at 578.

Here, a plain reading of the "governing law" provision of the Purchase Agreement makes clear that its application is expressly limited to contract-based claims; specifically, issues regarding the "validity and effect of this Agreement." (ECF No. 1-2, at ¶ 12).[3]

An appropriate Order follows.

---

[3] As a result, LORD's additional grounds for dismissing Plaintiff's constructive fraud and breach of fiduciary claims will not be addressed.